The People of the State of Illinois, Plaintiff-Appellee, *v.* Frances Sarah Ussery, Defendant-Appellant.

(No. 73-136;

Third District—December 30, 1974.

*Rehearing denied January 28, 1975.*

STOUDER, J., specially concurring.

Howard T. Savage, of Savage, Frazin, Spencer & Stewart, of Chicago, for appellant.

Edward P. Drolet, State's Attorney, of Kankakee, for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

The defendant, Frances Sarah Ussery, was indicted for the offense of possession of cannabis, in an amount in excess of 30 grams and not to exceed 500 grams. After a bench trial she was found guilty and was sentenced by the Circuit Court of Kankakee County to a term of from 1 to 3 years. She appeals, contending (1) that she did not receive the assistance of counsel to which she was constitutionally entitled, and (2) that the court denied her the right to be represented by counsel of her own choice.

On August 20, 1972, at about 4 P.M., Herbert Pope, a Kankakee County deputy sheriff, received a call from his office to go to the Munyon Road in Pembroke "where there was supposed to be a late model dark green vehicle involved in the picking of cannabis or marijuana." He went to the Pembroke area and radioed for an assist from Clint Butler, Pembroke's chief of police. Butler, in his squad car, followed Pope in his squad car along Munyon Road to near its south end where it intersected a road known as Guertin Blacktop. About 1000 feet from the Guertin Blacktop they observed a Cadillac with two or three subjects standing around it, one of whom was talking to the lone driver of a dark-green Volkswagen station wagon on the west side of the road. As the two police vehicles approached the other two vehicles, the Volkswagen moved toward the Guertin Blacktop, stopped at a stop sign, turned east onto the Blacktop and pulled over to the side of the road so that the

two police vehicles could pass. The two police cars had followed the Volkswagen, and when it stopped at the side of the road, Pope, who had turned on his red light to stop the Volkswagen, stopped behind it, exited his squad car and started towards the Volkswagen. At this point the Volkswagen pulled away, and Butler who was behind Pope passed Pope's vehicle, and, with his red light and siren on, he overtook the Volkswagen. During this chase, the Volkswagen was weaving back and forth across the pavement and the driver of the Volkswagen (defendant Ussery) stuck a brown paper bag out of the window of the Volkswagen and was shaking it as she traveled down the Blacktop. Butler saw something ground up or crushed up falling down from the bag as he was overtaking and passing the Volkswagen. Pope who was traveling behind Butler saw a clear plastic bag fall from the inside of the brown paper bag. The place where Pope saw the plastic bag fall was between 500 and 1000 feet from where Butler stopped the Volkswagen. Defendant was ordered from the Volkswagen at gunpoint, and she was detained by Butler while Pope walked back down along side the side of the road some 500 or more feet. On the north shoulder of the roadway, in the grass at the edge of the roadway about 500 to 1000 feet from where the Volkswagen was finally stopped, Pope came upon a clear plastic bag with a green leafy substance that looked and smelled like marijuana. He looked around the immediate area where the bag was found and saw no other bag. He went back to the Volkswagen and told defendant that he was placing her under arrest for possession of cannabis.

Although Butler had seen defendant shaking her hand with a bag in it outside the window of her car, and although he had seen something that was brown and greenish in color flying out of the bag, he did not see anything heavy fall out of the bag and he did not observe the plastic bag brought back by Pope fall out of the brown paper bag as defendant shook it.

After Pope informed defendant that she was under arrest and searched her vehicle and found a balled-up brown paper bag with a few granules of some dark-green leafy substance in it on the floor by the driver's seat, he held the brown paper bag and the plastic bag for evidence. He delivered these items to an investigator named Nagle. Butler searched defendant's vehicle. In it he saw a lot of junk, corn, beans, paper bags, eggs and some of everything else in the car. He did not see Pope take anything from defendant's car. There were a lot of bags in her car. He found some guns in her car which were cased and legal and defendant had a gun owner's identification. The officers permitted defendant to drive her car home between their two vehicles and then Pope drove her downtown to the sheriff's office. Defendant was set free from the sheriff's

custody, but the next day she was again arrested and brought back to the sheriff's office and held in custody. A chemist received the brown paper bag and the plastic bag from investigator Nagle and found that the plastic bag contained green plant material. He weighed this material and found it to be 108.36 grams. He tested a sample of the material that was in the plastic bag and found that the sample he tested was ground up marijuana and resin.

Defendant denied that she had attempted to elude the police, testified that a cigarette pack was the only thing she threw from the window of her car, denied that the policemen had taken anything from her car at the time they searched it, stated that she had bags in her car to put eggs, stringbeans and different things in that she sold in Chicago, that the two shotguns in her car were encased and tied up and that when Pope walked back down Guertin Road she had seen him go over to the edge of a field on the north side of the roadway, she did not see him pick up anything because she was talking with Officer Butler and that when Pope came back to her car he had a brown paper sack which he said that she had thrown out. She stated that she told Officer Pope at that time that she hadn't thrown anything out of her car. She had been taken to the sheriff's office and set free, had gone home and was arrested again at her home the next day. The next day at the police station she was released and she was arrested again upon a criminal capias that had been issued September 22, 1972, on November 1, 1972. She was released upon personal recognizance bond on November 2, 1972, and the public defender was appointed to represent her.

The defendant's trial attorney made no motion to suppress as evidence the plastic bag and contents thereof. He did move for and receive, 6 weeks before trial, copies of the statements of the arresting officer which gave him all the facts we have before us. On this appeal defendant seeks to raise the failure to move for suppression as the sole basis for her contention that her trial counsel was incompetent. She argues that the recovery of the evidence was the result of an illegal arrest without probable cause and that therefore the evidence must be excluded. She contends that she was under arrest from the time she first stopped.

■■ Her contention is not sustained by the facts. She was not under arrest when Deputy Pope stopped his squad car behind her car, in her "first stop" on Guertin Road, to "check it because it fit the description of the vehicle in question." The curbing of a car is not an arrest of the driver. An arrest involves three elements: (1) authority to arrest; (2) assertion of that authority with intention to effect an arrest; and (3) restraint of the person to be arrested. (*People v. Mirbelle,* 276 Ill.App. 533; *People v. Colon,* 9 Ill.App.3d 989, 996.) When one is approached

by a police officer to be questioned about her identity and actions, this is only an accosting, not an arrest. (*People v. Howlett*, 1 Ill.App.3d 906.) The act relied on as constituting an arrest must have been performed with the intent to effect an arrest and must have been so understood by the party arrested. (*People v. Jackson*, 98 Ill.App.2d 238; *People v. Smith*, 5 Ill.App.3d 341, 347; *People v. Bridges*, 123 Ill.App.2d 58.) In the instant case the defendant's own belief was "Oh, well, he don't want anything of me so I went on." When the defendant was first stopped she did not have reasonable ground to believe that she was under arrest. We conclude that defendant, or a reasonable man, innocent of any crime, would not think he had been arrested.

Unlike an arrest which requires probable cause, in a threshold inquiry of a citizen, aimed at effective crime prevention and detection, there is " '[t]he recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.' " *People v. Howlett*, 1 Ill.App.3d 906, 910, quoting from *Terry v. Ohio*, 392 U.S. 1, 22, 20 L.Ed.2d 889, 88 S.Ct. 1868.

■■■ It is apparent that the defendant was not under arrest at the time she discarded the plastic bag of marijuana onto the highway and that the decision of her attorney to omit the making of a motion to suppress the evidence, made with full knowledge of the facts, does not demonstrate that counsel was ineffective. In the instant case hindsight is no better than foresight. Further, it was the defendant's theory that only a cigarette pack was thrown from the car. In this posture of the case it was clearly a matter of judgment whether a motion to suppress should be made. A mere error of judgment does not amount to incompetence of counsel. *People v. Palmer*, 27 Ill.2d 311, 314.

■■ On November 2, 1972, an assistant public defender was appointed to represent the defendant. On December 4 it was revealed to the court that defendant had been and was regularly employed and was able to pay an attorney. The assistant defender suggested to the court that he withdraw as appointed public defender and appear thereafter in the case as private counsel for compensation. The defendant stated to the court, "Yes, sir. As I explained to him, I can't pay him all at once, but I can pay him." (Clearly referring to the defender who was in court with her.) The trial court refused to allow the defender's suggestion, and defendant on appeal contends that this violated her constitutional right to be represented by counsel of her choice.

In simple terms the fact of this record is that defendant's desire to engage private counsel was not any expression of a desire to hire a

lawyer other than the one who represented her during trial but was an expression of willingness to pay her court-appointed counsel who had in fact previously represented her in an earlier case. She did not wish to discharge her attorney, she merely wanted to pay him. The cases cited by appellant have no application to the facts.

Judgment affirmed.

ALLOY, J., concurs.

Mr. JUSTICE STOUDER, specially concurring:

I agree with the result by the majority of the court because I believe the result is in accord with the applicable precedents. However, I am disturbed about some of the reasoning employed in such precedents because of the apparent departure from our traditional concepts of arrest. To speak of "accost" or "stop" or "investigatory stop" as not being arrests suggests to me that we are employing euphemisms to avoid the application to arrests of well settled principles of law. If a police officer in his line of duty restrains an individual's liberty, then an arrest has occurred, and calling it by some other name does little credit to our adherence to legal principles. Where, as in this case, the testimony of the officer as well as the circumstances justify the conclusion that the defendant was not free to leave, then I find it hard to conclude other than that an arrest had occurred. This is not a case where the police officer was merely intending to exchange pleasantries or discuss the weather. It is clear from the officers' testimony and their conduct that they believed the defendant was fleeing, which contradicts any inference that the defendant was free to leave or that her liberty had not been restrained. I therefore believe that the trend of decisions which encourages deprivation of liberty by police officers without reasonable cause as would be required if the action were classified as an arrest represents a trend inconsistent with our traditional concept of individual liberties.