THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT EARL WILLIAMS, Defendant-Appellant.

First District (4th Division)   No. 62959

Opinion filed September 29, 1977.

James Geis and Martin Carlson, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ROMITI delivered the opinion of the court:

Robert Earl Williams (defendant) was found guilty of murder in a bench trial and was sentenced to 14 to 20 years in the Department of Corrections. His co-defendants, Leon McGregory, Pierre Dampier, and Michael Collins, were acquitted of the same charge. The only additional evidence offered by the State as to defendant Williams was his statement admitting involvement, made after his arrest. On appeal defendant contends that the statement should have been suppressed for two reasons: (1) it was not made after a knowing and intelligent waiver of his *Miranda* rights and (2) it was the direct product of his unlawful arrest.

Because we agree that the statement should have been suppressed as the product of an arrest not based on probable cause, we reverse defendant's conviction.

At the beginning of trial defendant moved to suppress the statement and it was agreed that the hearing on the motion would be concurrent with the trial. We will therefore summarize the evidence developed at trial.

Mrs. Nancy Roy testified that on November 15, 1972, she was the sole passenger in a car driven by the murder victim, Mrs. Ruth Erwin. At about 6:30 p.m. they came to the intersection of 148th and Roby Streets in Harvey, Illinois. They had stopped at the stop sign and were proceeding into the intersection when two boys ran in front of the car. One boy stayed on the passenger side of the car. The other stood in front of the car, waving his hands in the air and shouting. He then moved to the driver's side of the car and Mrs. Roy heard a "pop" and observed that the driver's window was cracked. Mrs. Roy testified that a total of four black teenagers were involved, but she could not provide any other identification. She ran to call the police and when she returned she discovered that Mrs. Erwin was wounded in the neck. It was stipulated that Mrs. Erwin died as a result of a bullet wound of the neck. Officer Sullivan of the City of Harvey secured a statement from Mrs. Roy.

Victor Jackson testified that at about 6:30 p.m. that day he was standing on the corner of 147th and Winchester Streets when he heard a shot. Winchester was one block from Roby Street and the shot came from the direction of 148th and Roby. He then saw three boys running toward him from behind a building across the street, on the south side of 147th Street. He identified them in court as Robert Williams, Pierre Dampier, and Michael Collins and stated that he had known them for 2 months, 3 months and 3½ years respectively. When Jackson heard the shot Leon McGregory was in a store on the corner of 147th and Winchester. Jackson

testified that the first and only time he talked to the police about the incident was about 2 days later when he talked to Officers Falkowski and Kubek after being taken down to the police station. Jackson did not specify what he told the officers, stating only that he told them about what he had seen at 147th and Winchester. Detectives Sylvester Jones and Melvin Abbott of the Harvey Police Department were assigned to the investigation of the shooting. At about 9 or 10 p.m. on November 16 as Jones was checking for people he knew frequented the area, he encountered defendant, Michael Collins and Pierre Dampier on the street, and because he knew they frequented the area he asked them to come to the police station so he could talk to them. According to Jones, the three agreed and they were taken in the squad car to the police station. At the station Jones asked the defendant if he knew why he was there. The defendant began to tell Jones about the shooting, but Jones stopped him and left the room to get the defendant's mother. In her presence Jones advised the defendant of his constitutional rights as required by *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. The defendant stated that he understood those rights and would talk to Jones. The defendant then told Jones that Pierre Dampier had told him that Leon McGregory had tried to rob a woman at 148th and Roby and had panicked and shot the woman. This statement was reduced to writing by Jones and signed by the defendant. However, Jones destroyed the statement when he secured a second statement from the defendant the next day. After securing this first statement from the defendant, Jones also questioned Dampier and Collins. Dampier stated that he had nothing to say and Collins said he knew nothing about the shooting. On the advice of an assistant state's attorney all three boys were then released. The next evening at about 7 p.m. Detectives Jones and Abbott, without a warrant, arrested the defendant at his home. Jones recalled that Abbott advised the defendant of his *Miranda* rights at the home and defendant was then taken to the police station. When they arrived at the station Jones questioned the defendant, again in the presence of defendant's mother. Jones knew the defendant to be 14 at the time of this questioning. At trial it was stipulated that defendant was 15 years of age. Jones asked the defendant about the statement he gave the day before. The defendant said he would tell the truth this time. According to Jones, the defendant then related that he, Pierre Dampier, Leon McGregory and Michael Collins were walking from a shopping center when one of them suggested they should rob somebody. McGregory had a gun which he gave to Dampier. They walked to 148th and Roby and waited for a car. When a car arrived with a female driver and female passenger Dampier stepped in front of it and approached the driver's side. Dampier asked the woman for her purse. She screamed and

Dampier fired one shot. The boys then ran north on Roby Street. Jones typed the statement and the defendant signed it. At trial Jones identified defendant Dampier's Exhibit 1 as the statement, but it was apparently not made part of this record on appeal. The testimony concerning defendant Williams' statement was considered only as evidence against him; it was not admitted as evidence against his co-defendants.

Detective Abbott testified to essentially the same facts as Detective Jones concerning the arrest and subsequent statement of the defendant. However, Abbott's recollection was that Jones was the one who gave defendant his rights on the night of the arrest. Abbott also recalled that in defendant's post-arrest statement it was McGregory who originated the robbery idea and who stepped in front of the car, though he agreed that Dampier was named as the shooter.

Detective Jones testified that after he secured the second statement from the defendant, he spoke to Leon McGregory. McGregory had been arrested the morning of the 17th and had denied any knowledge of the shooting. But when Jones showed him the defendant's statement, McGregory gave a statement in which he maintained that he had been with Victor Jackson when the shooting occurred. Jones then picked up Victor Jackson. Jones stated that he only talked to Jackson once and Jackson told him that he had heard a shot and "saw some guys running away." Jones did not state whether Jackson named those people, but earlier in his testimony he stated that Jackson did not name anyone when he talked to him. Jones and Abbott, however, both testified that Jackson claimed to have been with McGregory at the time of the shooting. Abbott recalled talking to Victor Jackson in the presence of Jones, but he did not state when that conversation took place. Nor did he specify what Jackson told them except that he was with McGregory.

Defendant Williams presented one witness, Ezra Pittman, on his motion to suppress. Pittman testified that on the night of defendant Williams' arrest, Williams and Williams' mother were living with him. He stated that Detectives Abbott and Jones came to his house and told him they wanted to bring in the defendant for questioning. The only other thing they said was that Pittman and Williams' mother could accompany them.

At the close of the evidence the trial court entered findings of not guilty as to defendants McGregory, Dampier, and Collins. Defendant Williams' motion to suppress was denied and he was found guilty of murder.

## I.

We first consider defendant's contention that he did not waive his rights under *Miranda* prior to giving his post-arrest statement. Defendant does not argue on appeal that those rights were not enunciated to him when he

was arrested. Despite their disagreement as to who stated those rights to the defendant, Detectives Jones and Abbott were clear in their recollection that one of them did so. The testimony of Pittman to the contrary presented a question of credibility which was resolved by the trial court in favor of the officers.

■■■ But defendant cites the *Miranda* statement that "* * * a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." (384 U.S. 436, 475, 16 L. Ed. 2d 694, 724, 86 S. Ct. 1602.) The record before us does indicate that at the time of arrest the defendant said nothing immediately after being informed of his rights; nor did he later explicitly waive those rights prior to giving his statement. But a reviewing court will look at the totality of the circumstances in determining whether a defendant has waived his rights. (*People v. Prude* (1977), 66 Ill. 2d 470, 363 N.E.2d 371; *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731.) Those surrounding facts and circumstances may establish a waiver in the absence of an express statement of such waiver by the defendant. (*People v. Landgham* (1970), 122 Ill. App. 2d 9, 257 N.E.2d 484; *cert. denied* (1971), 402 U.S. 911, 28 L. Ed. 2d 652, 91 S. Ct. 1389.) The record established that the day before defendant made his post-arrest statement he was given his *Miranda* rights prior to being questioned for the first time concerning the murder. At that time defendant stated that he understood those rights and wished to give a statement. It is reasonable to infer that when defendant was again informed of those rights one day later he still understood them. Our supreme court has held that where a defendant has been advised of his rights and has indicated that he understands them, if he then chooses to speak and not to request a lawyer, this is evidence that he knows his rights and chooses to waive them, despite the absence of an express waiver by him. (*People v. Higgins* (1972), 50 Ill. 2d 221, 278 N.E.2d 68, *cert. denied* (1972), 409 U.S. 855, 34 L. Ed. 2d 100, 93 S. Ct. 195; *People v. Burbank* (1972), 53 Ill. 2d 261, 291 N.E.2d 161, *cert. denied* (1973), 412 U.S. 951, 37 L. Ed. 2d 1004, 93 S. Ct. 3017.) The day before his arrest defendant was advised of his rights and stated that he understood those rights. After defendant was arrested he was again advised of his rights before he was taken to the police station where he was asked about the statement he had given the day before. He stated that he would tell the truth this time, and then gave the statement at issue. From these facts and circumstances we conclude the defendant knowingly and intelligently waived his *Miranda* rights prior to making his post-arrest statement.

■■ We make this determination with the awareness of the special scrutiny required because of the age of the defendant. (*In re Gault* (1967),

387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428; *People v. Simmons* (1975), 60 Ill. 2d 173, 326 N.E.2d 383.) Nonetheless, the fact of being a minor does not mean that one's rights cannot be waived. (*In re Bizzle* (1976), 36 Ill. App. 3d 321, 343 N.E.2d 633.) The defendant was questioned in the presence of his mother on both occasions. There was no evidence that defendant had any mental impairment which prevented his understanding what was happening to him. We conclude that defendant's age did not prevent him from properly waiving his *Miranda* rights.

## II.

■■■ The defendant also contends that his statement should have been suppressed as the fruit of an improper arrest. (*Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.) The evidence at trial, which was also the evidence for the motion to suppress, established that the defendant was arrested without a warrant at his home when he was doing nothing illegal at the time. It thus became the burden of the State to establish that he was arrested upon probable cause. (*People v. Riszowski* (1974), 22 Ill. App. 3d 741, 318 N.E.2d 10.) Although probable cause is not subject to formulaic definition, we must generally establish whether "* * * a reasonable and prudent man in possession of the knowledge which has come to the arresting officer would believe the person to be arrested is guilty of the crime * * *." (*People v. Macias* (1968), 39 Ill. 2d 208, 213, 234 N.E.2d 783, 786, *cert. denied* (1969), 393 U.S. 1066, 21 L. Ed. 2d 709, 89 S. Ct. 721.) We recognize that such a determination is ordinarily that of the trial judge, to be reversed only when manifestly erroneous. (*People v. Williams* (1974), 57 Ill. 2d 239, 311 N.E.2d 681.) However, the facts of this case as established at trial make clear that even under this standard of review the judgment should be reversed. The testimony makes clear that when detectives Abbott and Jones arrested the defendant they knew the following: (1) four black teenagers were involved in the murder; (2) defendant was a black teenager who frequented the area; (3) when questioned defendant stated that Dampier told him that McGregory shot the victim when he panicked in a robbery attempt. A general description such as "black teenager" does not in itself establish probable cause to arrest one fitting that description. (*In re Woods* (1974), 20 Ill. App. 3d 641, 314 N.E.2d 606.) Nor do the additional facts listed supply supporting evidence for probable cause. Defendant frequented the area because he lived in the area. His information that he had been told that another person committed the murder in an abortive robbery attempt does not reflect intimate knowledge of crime details which would focus suspicion on him. Clearly on the basis of this information alone the officers did not have probable cause to arrest the defendant.

However, the State in its brief suggests that the officers also knew at the time of defendant's arrest that Jackson had named him as one fleeing from the scene of the crime. On appeal, the State argues that evidence for this is found in an arrest report for the defendant which was signed by Detective Abbott. This report, however, merely lists Jackson as a witness. Our search of the record produces no indication that this report was ever introduced at trial. The evidence at trial, in fact, established that Detectives Abbott and Jones did not speak to Jackson until after the arrest of the defendant. Even when they did speak to him, their testimony did not indicate whether he named the defendant as one fleeing from the crime scene. Victor Jackson testified only that about two days after the incident he spoke to Officers Falkowski and Kubek about what he had seen. He did not indicate whether the conversation took place before or after the defendant's arrest. There also was no evidence presented that Detectives Abbott and Jones had received information about Jackson's account from the police officers to whom Jackson said he gave the unspecified information. Therefore the arrest of the defendant was unlawful for lack of probable cause.

■■ When a defendant has been arrested without probable cause, statements by the defendant which were made as a result of that arrest are inadmissible at trial unless the State can establish the existence of intervening circumstances which dissipate the taint of the illegal arrest. (*Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254.) *Brown* established that the mere fact that *Miranda* warnings were given does not *per se* break the causal connection between the arrest and a subsequent statement. Other factors to be considered, according to *Brown*, are the temporal proximity of the arrest and the statement, whether there were intervening circumstances, and the purpose and flagrance of the official misconduct in making the arrest. In the present cause the defendant was arrested and immediately taken to the police station and questioned. There was no significant lapse of time between the arrest and his statement. The only intervening circumstance was the statement to him of his *Miranda* rights, a factor which according to *Brown* in itself does not automatically attenuate the taint. The arrest was made without probable cause and can only be interpreted as having been for investigatory purposes. The evidence at trial did not establish that the police had any more information connecting the defendant with the crime on day of his arrest than they had the day before when they released him after questioning. Given the obvious impropriety of this police conduct we determine that merely apprising the defendant of his *Miranda* rights was insufficient to dissipate the taint of his illegal arrest. His statement should, therefore, have been suppressed.

■■ · With the suppression of this statement, the only significant

remaining evidence against the defendant is that he matched Mrs. Roy's general description of the assailants as black male teenagers and Jackson's testimony that he saw the defendant running from the general direction of the shooting right after it occurred. This evidence clearly is insufficient to prove beyond a reasonable doubt that the defendant was involved in the murder of Mrs. Erwin. Indeed, on the basis of this evidence defendant's co-defendants were acquitted. We accordingly agree with the defendant that the suppression of his statement renders the remaining evidence insufficient to establish his guilt and requires reversal without remand. See *People v. Brown* (1968), 99 Ill. App. 2d 281, 241 N.E.2d 653.

Reversed.

JOHNSON and LINN, JJ., concur.