THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* STEVEN ZACH, Defendant-Appellee.

Third District   No. 79-190

Opinion filed October 11, 1979.

Edward F. Petka, State's Attorney, of Joliet (Bart Markese, Assistant State's Attorney, John X. Breslin and Gary Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Daniel J. Kallan, of Kallan & Kallan, of Joliet, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal by the State pursuant to Supreme Court Rule 604(a)(1) (Ill. Rev. Stat. 1975, ch. 110A, par. 604(a)(1)) from the order of the trial court in the Twelfth Judicial Circuit, Will County, suppressing a

statement made by defendant Steven Zach, pursuant to a pretrial motion to suppress two statements which defendant made to police. The trial court suppressed one of the two statements.

On appeal, the State contends that the trial court erred in suppressing defendant's statement. Sergeant Watters of the Will County sheriff's police testified at the hearing on January 10, 1978, that he "directed" Deputies Petersen and Gans to "pick up Steven Zach at his residence." Petersen also testified that Sergeant Watters had "advised" Gans and Petersen to go to defendant's residence and there, to "request" the defendant to come to the sheriff's station to be interviewed. No arrest warrant had been issued for defendant. The two deputies arrived at defendant's apartment, identified themselves and asked defendant to come to the sheriff's station to be interviewed about the stabbing of Donald Nickel. Defendant stated he would come to the station but asked if he could drive his own truck there. Deputy Petersen telephoned Sergeant Watters to ask if defendant would be allowed to drive himself to the station. Watters informed Petersen that this would be all right. Defendant then drove to the sheriff's station. It is not shown of record whether he was closely followed by the deputies, but when he arrived at the station he was introduced to Sergeant Watters.

Sergeant Watters took defendant to his office and told defendant that he wanted to interview him. The sergeant also then stated to defendant that he was not under arrest. Initially, defendant and Watters discussed subjects not related to the stabbing incident. Watters then asked defendant if he had any knowledge about the stabbing. Defendant responded that he knew the principal, Terry Renslow, and that he had worked for Renslow and had problems with Renslow. Watters then said that he felt defendant knew something about the stabbing. At this point, defendant said, "Man, I was there; but if I tell you what I know, I'm dead." It is this statement which the judge ordered suppressed.

After defendant made his first statement, herein referred to, Watters told defendant that he had made an incriminating statement and then, for the first time, advised him of his constitutional rights. Defendant's second statement, which was not suppressed by the trial court, was made after defendant had been advised of his constitutional rights.

In ordering the suppression of the first statement made by defendant herein referred to, the trial court said:

> "I think the first thing you have to determine, I suppose, is, it goes to both whether the police think he is in custody or he thinks he is in custody. I certainly think Mr. Zach had a reason to think he was in custody; two police officers come up into DuPage County to get him.

And I think there is evidence it was his state of mind when he asks * * * 'Can I take my truck?' Now, if he didn't think he was in custody or if he thought he had freedom to do what he wanted to do, he wouldn't be asking the officers, 'Can I take my truck?' He will tell them, 'I will drive down.'

On top of that, it also puts into some question, in my mind, whether they really—what they had been told, because rather than tell him to take the truck, they said, 'Let me call Watters and see if I can let you go to take the truck, your own truck.' I might suggest the size of Officer Gans, if he came up and asked me to go somewhere, I would go.

* * * The State has not sustained their burden in my eyes to show that the defendant had the freedom to go where he wanted to go, * * * ."

After defendant was advised of his constitutional rights, and upon leaving the sergeant's office, defendant made a statement to the effect that everybody in the case was lying. The trial judge held that this second statement was voluntary, noting that there was no evidence of the police attempting to elicit the second statement.

In this case, we are confronted with the basic consideration which is popularly described as the *Miranda* warning. In *Miranda v. Arizona* (1966), 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706, 86 S. Ct. 1602, the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." The procedural safeguards referred to in the *Miranda* case specify that prior to questioning a defendant, he must be warned that he has a right to remain silent, that any statement he makes may be used as evidence against him, and that he has the right to the presence of a retained or appointed attorney.

In the instant case, it is undisputed that the prosecution failed to use these procedural safeguards prior to the time defendant made his first statement. It is also undisputed that defendant's first statement was made in response to questioning by law enforcement officers. The only issue, therefore, before us is whether the defendant was in custody at the time he made the first statement, or had otherwise been deprived of his freedom of action in a significant way. We also note that, in accordance with Illinois law, the burden of proving that defendant was not in a

custodial situation and had not been deprived of his freedom of action in any significant way is on the State. Section 114—11(d) of the Code of Criminal Procedure states that:

"The burden of going forward with the evidence and burden of proving that a confession was voluntary shall be on the State * * *." (Ill. Rev. Stat. 1977, ch. 38, par. 114—11(d).)

The most common form of custody is an arrest. We have held that an arrest involves three elements, specifically, (1) authority to arrest; (2) assertion of that authority with intention to effect an arrest; and (3) restraint of the person to be arrested. (*People v. Ussery* (1974), 24 Ill. App. 3d 864, 867, 321 N.E.2d 718, 720.) All three of these elements were found to be present in the instant case by the trial court. The two deputies who went to defendant's residence had authority to arrest when their sergeant "directed" them to "pick up" the defendant at his residence. The deputies asserted that authority with intention to effect an arrest. The fact of restraint of defendant in a significant way was demonstrated in their response to defendant's question about whether he could drive his own truck to the sheriff's station. By telephoning their superior to see if it was permissible for defendant to drive his own truck to the station, the deputies were asserting their authority with intention to effect an arrest, as the trial court has noted. If the deputies had not wanted to assert their authority to arrest or "pick up" defendant, their response would have been, "We only ask you to come in to the station for questioning. If you decide to comply, we will offer you a ride, but it is up to you whether to accept the ride or come on your own."

Although defendant drove his own truck to the station, the deputies apparently followed him and once they were at the sheriff's station, defendant was introduced to the sergeant. It is true that the sergeant stated there that he was not under arrest, but he was not told that he was free to leave at any time, which indicated that defendant might have been restrained had he attempted to leave.

■■ We have recently held that a normal declaration of arrest is not necessary for an arrest to occur. (*People v. Gale* (1979), 72 Ill. App. 3d 23, 25, 390 N.E.2d 921, 923.) The converse of this is also true, and, therefore, the fact that the sergeant told defendant he was not under arrest does not necessarily mean defendant was not in a custodial situation, where his freedom of action was not limited in any significant way.

■■ Our supreme court has noted in *People v. Wipfler* (1977), 68 Ill. 2d 158, 165, 368 N.E.2d 870, 872:

"Both the Federal courts and the appellate courts of this State have held that the intent of the officer and the understanding of the arrestee are two essential elements in the definition of arrest."

The trial judge here found evidence of the understanding of defendant in

defendant's asking the deputies whether he could drive his truck to the police station. The trial judge concluded that defendant's question indicated that he thought he was in a custodial situation. We believe this finding is supported by the record. The trial court's finding that defendant was in a custodial situation at the time he made his first statement and the trial court's finding that the State failed to sustain its burden of proving that defendant's first statement was voluntary are not against the manifest weight of the evidence.

In the defendant's brief, defendant asks this court to reverse the trial judge's decision ordering that defendant's second statement not be suppressed. Defendant argues that his second statement should have been suppressed because the police lacked probable cause to seize defendant. The State has argued that a defendant may not appeal prior to trial from a trial court's denial of defendant's pretrial motion to suppress evidence. We recently decided this particular question in favor of the State in *People v. Wasilewski* (1978), 66 Ill. App. 3d 1, 383 N.E.2d 31. In that case we stated:

> "\* \* \* our supreme court by rule has specifically granted unto the State the right to appeal from an order quashing a search warrant or suppressing evidence. No like right has been granted by rule or statutory enactment to defendants whose motion to quash or suppress has been denied.
>
> The defendant in the instant case is attempting to perfect an interlocutory appeal and the status of such appeals is discussed in *People v. Eddington* (1977), 47 Ill. App. 3d 388, 362 N.E.2d 103. In *Eddington* the reviewing court held that the intent of Rule 604(a)(1) (Ill. Rev. Stat. 1975, ch. 110A, par. 604(a)(1)) is that an interlocutory appeal is available only to the State on a question concerning the constitutionality of the manner in which evidence was obtained.
>
> Based upon the rule of the supreme court (Ill. Rev. Stat. 1975, ch. 110A, par. 604(a)(1)) and the judicial construction of such rule we conclude that the defendant had no right or authority prior to the termination of his litigation to appeal the trial court's order denying his motion to suppress search warrants and to suppress the evidence derived from the execution of them." 66 Ill. App. 3d 1, 5-6.

■■ In the instant case, defendant is attempting to perfect an interlocutory appeal. Our supreme court has held that no appeal lies from an interlocutory order in absence of a statute or rule specifically authorizing such review. (*People v. Miller* (1966), 35 Ill. 2d 62, 67, 219 N.E.2d 475, 478.) We have noted that the intent of Rule 604(a)(1) is that an interlocutory appeal of a pretrial order on suppression of evidence is available only to the State. Consequently, we may not, at this juncture in the trial

of defendant, act, on appeal, on the correctness of the trial judge's decision not to suppress defendant's second statement.

For the reasons set forth, the order of the Circuit Court of Will County suppressing defendant's first statement is affirmed. The request of defendant, in this proceeding, that the order of the trial court directing that the second statement not be suppressed will not be considered by this court on this appeal in this cause.

Affirmed.

STENGEL and SCOTT, JJ., concur.