THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES DOWDELL, Defendant-Appellant.

Third District   No. 78-486

Opinion filed February 25, 1980.

Robert Agostinelli, Michael Filipovic, and Karen S. Szpajer, all of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

After a bench trial in the circuit court of Will County, the defendant, James Dowdell, was found guilty of burglary and sentenced to a two-year term of probation.

On this appeal the only error urged by defendant is his claim the trial court erred in denying his motion to suppress statements and physical evidence. Defendant argues his detention was not based on probable cause and therefore violative of his fourth amendment rights. Further, the statements and physical evidence being the result of a constitutionally impermissible seizure, the statements and physical evidence should have been suppressed.

In support of his suppression motion defendant and his girlfriend, Jasaer Fouad, testified to similar facts. On February 26, 1978, at about 6 p.m. Dowdell and his girlfriend were at her apartment in Crete, Illinois. Two plain clothes officers and one uniformed officer went to the Fouad apartment, knocked and were invited in by Fouad. She was informed they wanted to talk to Dowdell, and she went and got him from another room in the apartment. The police officers announced who they were and asked Dowdell to come down to the station because they wanted to ask him some questions. Dowdell asked them what they wanted to question him about but the officers refused to answer, indicating that they needed to question him at the police station. Up to this point the testimony of Dowdell and Fouad and that of Officers Downey and McGuire, two of the three police officers, was substantially the same.

However, Dowdell and Fouad testified that the request was made four times and that Dowdell continued to ask the purpose of going to the station with the officers refusing to respond, except to say that questioning

could only be done at the police station. According to Downey and McGuire, Dowdell made the request for information only once, although they also conceded that they declined to tell the defendant why they wanted him to go to the station except generally to question him. Thereafter defendant got his coat and accompanied the police officers in their squad car to the station, where he was taken to an interrogation room. There he was given and waived his *Miranda* rights. Defendant was questioned about a burglary not the subject of the instant offense and thereafter he made inculpatory statements about the burglary with which he was charged, and showed the officers where some of the stolen property was located.

According to the police officers Dowdell was not arrested in the apartment or at any time prior to giving the statement and, according to them, if he wished to refuse to accompany them to the police station they had no probable cause for arresting the defendant for the burglary charged or for any other offense until after he had made his inculpatory statements. The evidence is also undisputed the defendant was never told that he was either under arrest or not under arrest. It is also undisputed defendant was never advised that he need not accompany them to the police station.

Although there is a conflict in the evidence as to whether the defendant was requested to come to the police station once, as the police officers testified, or four times, as the defendant and his girlfriend testified, for the purposes of review the issue presented on this appeal, we will consider as true the testimony of the police officers that the request was made only once.

In denying the motion to suppress the statements and physical evidence, the trial court held defendant was not arrested until after he had made his inculpatory statements and, even if the defendant had been arrested improperly prior thereto for want of probable cause, the statements were voluntarily given and hence not suppressable.

According to the defendant he was seized and detained without probable cause therefore for the purpose of custodial questioning in the general investigation of criminal activity. If his detention was violative of his constitutional rights, then the statements and physical evidence were tainted with the illegality of the detention and hence should have been excluded from the evidence.

The prosecution, on the other hand, argues "* * * the statements made by defendant were voluntarily given in a non-custodial setting."

In *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254, the defendant was arrested in what might be characterized as the usual and obvious manner, *i.e.*, he was declared under arrest by police officers who identified themselves and accompanied the declaration by a

show of weapons. The defendant was thereafter handcuffed, taken to the police station in a police car, and placed in an interrogation room. Thereafter he was given his *Miranda* warnings and, having waived his rights, he was questioned and made a written confession of a murder. At a hearing to suppress his confession the evidence showed the police officers had no arrest warrant and had no probable cause for arresting him. Conceding the defendant was arrested and that his arrest was not based on probable cause, the court in *Brown* was primarily concerned with the consequences of those facts.

In the more recent case of *Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248, decided after the trial in the case at bar, the court considered further the consequences of the absence of probable cause for arrests or detentions where the fact of an arrest was less obvious. In *Dunaway* the defendant was approached at his home, requested to come to the police station for questioning, transported to the police station in a police car, taken to an interrogation room, advised of his *Miranda* rights, which he waived, and made inculpatory statements and drawings. The defendant was neither advised that he was under arrest nor that he was not under arrest at the time he left his home or during transportation to the police station and was not advised that he was under arrest until after he made the inculpatory statements. The police officers testified if the defendant had declined to accompany them to the police station they would have arrested him. It was also conceded the officers had no probable cause for arresting the defendant until after he made his inculpatory statements.

Both parties to this appeal recognize that the *Dunaway* case is crucial to the resolution of the issues presented on this appeal. We believe the facts in the instant case are legally indistinguishable from those in *Dunaway*. It is the intrusion on the liberty and privacy of a person and his detention for purpose of custodial questioning without probable cause therefore that is condemned by the fourth amendment in *Dunaway*. In *Dunaway*, the court decided "the question of the legality of custodial questioning on less than probable cause for a full-fledged arrest." The court answered this question by declaring that except for the "stop and frisk exception" (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868) there were no exceptions to the fourth amendment mandate requiring probable cause for the intrusion on the liberties of individuals and their detention even where a formal arrest was not made.

The prosecution seeks to distinguish the facts in *Dunaway* from those in the instant case by pointing to the fact in *Dunaway* that the police officers testified they would have arrested the defendant had he been otherwise unwilling to accompany them to the police station. According to the prosecution in the instant case, since the police officers testified they

would not have arrested the defendant if he refused to accompany them, a different result should ensue. However, we fail to see how the results should depend on the uncommunicated ideas or intentions of the police officers. No particular significance was attached to these uncommunicated facts in the *Dunaway* opinion, and the emphasis is on the absence of any communications by the police officers to the defendant that he was not under arrest. This was not a casual telephone inquiry or an informal visit with the defendant. It was a deliberate special trip to an apartment where the defendant was thought to be by three police officers suspicious of the defendant but without probable cause for his arrest. To suggest the defendant was not seized or detained merely because after the fact the police officers disclaimed any intention of arresting the defendant would permit the evasion of fourth amendment protections. If the police officers intended to convey any impression other than that the defendant's detention was intended, he could have been told that he was not under arrest and he need not come with them to the police station. We are not saying it is indispensable in any case that the officers interrogating an individual must advise him orally that he is not under arrest, etc. It is rather the totality of what transpired which determines, as noted in *Dunaway*, whether or not a motion to suppress should be granted. Advising the defendant of his *Miranda* rights at the police station is only consistent with the rule the defendant was in custody contrary to the assertion of the prosecution.

Without repeating the extensive analysis in *Dunaway*, we conclude the defendant's initial detention without probable cause violated his fourth amendment rights and the evidence resulting therefrom should be suppressed unless attenuating circumstances intervened.

According to the standards set forth in *Dunaway*, the statements by the defendant were not made under such circumstances that the effect of the illegal detention was attenuating. In this connection it should be recognized that whether the statements were voluntary under the fifth amendment standards is only a threshhold question and even if voluntary there must be intervening circumstances sufficient to remove the taint of the illegal detention. We find no such circumstances in the instant case, and the facts are so similar to those in *Dunaway* that we conclude the motion to suppress should have been granted.

For the foregoing reasons the judgment of the circuit court of Will County is reversed, and this cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

ALLOY and BARRY, JJ., concur.