THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICKY J. McMAHON, Defendant-Appellant.

Third District   No. 78-74

Opinion filed April 18, 1980.

STENGEL, J., dissenting.

Robert Agostinelli and Thomas Lillien, both of State Appellate Defender's Office, of Ottawa, for appellant.

Bruce W. Black, State's Attorney, of Pekin (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

The defendant, Ricky J. McMahon, was convicted in the Circuit Court of Tazewell County of burglary (Ill. Rev. Stat. 1975, ch. 38, par. 19—1). He was subsequently sentenced to the penitentiary to serve not more than 4½ nor less than 1½ years. The defendant appeals from his conviction.

Although the defendant raises multiple issues on appeal, we need

only concern ourselves with three interrelated issues. First, was the defendant under arrest at the time he made incriminating statements; second, if he was under arrest when he made the statements, was he arrested in the absence of probable cause; and third, if there was no probable cause to effectuate the arrest and the arrest was consequently illegal, were the mitigating factors of *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254, present to attenuate the taint of the illegal arrest and thus make the defendant's statements admissible.

On July 3, 1977, the office of Dr. Wendell Carter, located in the Fonduland Medical Center in East Peoria, was burglarized. Detectives David Madsen and Jack Duke of the East Peoria police department investigated the burglary. In the middle of a hallway in the burglarized office Duke and Madsen found some spilled lemonade mixture. In the lemonade mixture was a shoeprint.

On July 12, Detectives Madsen and Duke were in the vicinity of the burglarized office and observed three individuals sitting on a bench immediately to the rear of the doctor's office. One of these individuals was the defendant, Rick McMahon. After exiting from their police car, the detectives walked up to the three and asked McMahom and his two companions their names. Detective Duke then asked to see the bottoms of their shoes. Duke and Madsen observed that the pattern on the bottom of McMahon's boot was similar to the pattern they had seen in the spilled lemonade powder at the burglary scene. At this time Duke asked McMahon to accompany them to the police station. When McMahon entered the car, he sat in the right front seat. Duke drove, and Madsen sat in the rear.

On the way to the police station, Duke asked McMahon if he was hungry, and McMahon replied that he was. They stopped at a McDonald's, and while McMahon and Madsen waited in the car, Duke purchased some food for McMahon. After Duke returned, the three continued on to the police station. At no time was the defendant manacled, although Duke testified that it was normal police procedure to handcuff arrestees.

At the station, McMahon was given his *Miranda* warnings which, according to Officer Madsen, was normal procedure for everyone whom the police suspected had knowledge or information of a crime. After stating that he understood his rights and signing a waiver form, McMahon was questioned about the burglary at Dr. Carter's office. While questioning McMahon, Duke directed the defendant to take off one of his shoes, and he so complied. After initially denying any knowledge of the burglary, McMahon made an admission when Duke confronted him with incriminating evidence, *i.e.*, the shoeprint and an unidentified palmprint. McMahon's oral admission came 10 to 15 minutes after the signing of the

waiver. Forty-five minutes later an oral confession was made by McMahon, and a written confession followed.

Although Officers Madsen and Duke testified that McMahon was free to go, and was not under arrest, until he made his first oral admission, neither officer actually told McMahon that he was not under arrest prior to his admission. In addition, after a preliminary hearing, Duke stated to defense counsel that McMahon would have been free to leave prior to making the admission, but added, "He might not have made it down the stairs." When defense counsel asked him why, Duke's response was "Well, he might have fell down those stairs." McMahon testified that when Duke and Madsen asked him to accompany them to the police station, he felt that he had no choice but to go along, and felt that at this time he was under arrest.

The defendant contends on appeal that the statements made by him at the station should have been suppressed because they were the fruits of an illegal arrest. Whether or not the defendant's contention has merit hinges upon several factors, the first of which is whether or not the defendant was under arrest when he made the statements.

Both the defendant and the State have cited to us many cases which have a bearing on whether or not there was an arrest of the defendant. (See, *e.g., People v. Wipfler* (1977), 68 Ill. 2d 158, 368 N.E.2d 870; *People v. Dowdell* (1980), 81 Ill. App. 3d 266, 401 N.E.2d 295; *People v. Gale* (1979), 72 Ill. App. 3d 23, 390 N.E.2d 921; *People v. Boerckel* (1979), 68 Ill. App. 3d 103, 385 N.E.2d 815; *People v. Creach* (1979), 69 Ill. App. 3d 874, 387 N.E.2d 762, *aff'd in part* (1980), 79 Ill. 2d 96; *People v. Dozier* (1979), 67 Ill. App. 3d 611, 385 N.E.2d 155; *In re Foster* (1978), 66 Ill. App. 3d 193, 383 N.E.2d 755; *People v. Helms* (1978), 67 Ill. App. 3d 729, 385 N.E.2d 127; *People v. Ussery* (1974), 24 Ill. App. 3d 864, 321 N.E.2d 718.) However, we find the recent Supreme Court decision of *Dunaway v. New York*, 47 U.S.L.W. 4635 (June 5, 1979), to be dispositive of this on this issue. In *Dunaway*, Detective Anthony Fantigrossi of the Rochester police department interviewed a jail inmate who he was told had information implicating the defendant Dunaway in an armed robbery and felony murder. Although Fantigrossi learned nothing from the inmate that would constitute grounds for an arrest warrant, he ordered the other detectives to "pick up" Dunaway and "bring him in." Three detectives located the defendant at a neighbor's house, and took him into custody. Although at no time was he told he was under arrest, if he had attempted to leave he would have been physically restrained. After being picked up, he was taken to the police station and given his *Miranda* warnings. After waiving his *Miranda* rights, he made statements which incriminated him.

The defendant's motions to suppress the statements were denied, and both the appellate division and the court of appeals affirmed the

defendant's conviction. However, the United States Supreme Court remanded the case to the trial court for findings pursuant to its holding in *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254. On remand, the trial court reversed the defendant's conviction on the grounds that the arrest was illegal. The appellate division reversed the trial court, holding that although the police did not have probable cause to arrest the defendant, "[l]aw enforcement officials may detain an individual upon reasonable suspicion for questioning for a reasonable and brief period of time under carefully controlled conditions which are ample to protect the individual's Fifth and Sixth Amendment rights." (*People v. Dunaway* (1978), 61 App. Div. 2d 299, 302, 402 N.Y.S.2d 490, 492, quoting *People v. Morales* (1977), 42 N.Y.2d 129, 135, 366 N.E.2d 248, 251). The United States Supreme Court granted *certiorari* after the court of appeals dismissed defendant's application for leave to appeal.

The United States Supreme Court reversed. "Reasonable suspicion," the court held, may be sufficient to justify a governmental intrusion in the form of a "stop and frisk" when the police officer has reason to believe he is dealing with an armed and dangerous individual. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) However, intrusion tantamount to a "seizure" can only be effectuated on the basis of probable cause.

In determining whether or not the intrusion in *Dunaway* was such to mandate a showing of probable cause, the Supreme Court said:

"[T]he detention of petitioner was in important respects indistinguishable from a traditional arrest. Petitioner was not questioned briefly where he was found. Instead, he was taken from a neighbor's home to a police car, transported to a police station, and placed in an interrogation room. He was never informed that he was 'free to go'; indeed, he would have been physically restrained if he had refused to accompany the officers or had tried to escape their custody. The application of the Fourth Amendment's requirement of probable cause does not depend on whether an intrusion of this magnitude is termed an 'arrest' under state law. The mere facts that petitioner was not told he was under arrest, was not 'booked,' and would not have had an arrest record if the interrogation had proved fruitless, while not insignificant for all purposes, see *Cupp v. Murphy*, 412 U.S. 291 (1973), obviously do not make petitioner's seizure even roughly analogous to the narrowly defined intrusions involved in *Terry* and its progeny. Indeed, any 'exception' that could cover a seizure as intrusive as that in this case would threaten to swallow the general rule that Fourth Amendment seizures are 'reasonable' only if based on probable cause." 47 U.S.L.W. 4635, 4639.

¶ 1 We find no appreciable factual difference between the case at bar and *Dunaway*. Both cases involve situations where the defendant was told to accompany police officers to the station for questioning. In both cases, the defendant was not handcuffed, but neither was he told he was free to go. In both cases, the defendant, after receiving and waiving his *Miranda* rights, made incriminating statements which were used against him at trial. In both cases, the defendant was not "booked" and further processed until after statements were made. Just as there was an arrest in *Dunaway*, there was an arrest in the instant case.

The State attempts to distinguish *Dunaway* on several grounds. The State points out that in *Dunaway*, as opposed to the present case, officers were ordered to "bring in" the defendant. Such a minor factual difference does not convince us that the cases are dissimilar, because the origin of the decision within the police department to detain a suspect for custodial interrogation is of no legal significance. In addition, the State points to testimony in *Dunaway* that the defendant would have been physically restrained had he attempted to leave as distinguishing that case from the case at bar. It is true that there is no such express testimony to this effect in the instant case, but the absence of such a declaration does not mean that the suspect was not being restrained. (See *People v. Zach* (1979), 77 Ill. App. 3d 17, 395 N.E.2d 758.) In fact, all of the evidence presented at the hearing on the motion to suppress suggests the contrary.

In *In re Foster* (1978), 66 Ill. App. 3d 193, 383 N.E.2d 755, the court was faced with deciding whether or not defendant was arrested in a factual context very similar to the instant case. In *Foster*, the DuQuoin police were informed that the defendant Foster was involved in some acts of vandalism. Approximately one week after the vandalism occurred, two officers observed Foster and another youth running from an alley. The officers (apparently with no express orders to "pick up" anyone) stopped Foster, and after receiving unsatisfactory responses to their questions, told him to get into the squad car. The defendant was subsequently taken to the city hall/courtroom, given his *Miranda* warnings, and interrogated. In response to the questioning Foster made an admission and then a confession. The defendant's motion to suppress the confession was denied, and Foster convicted. In response to the contention on appeal that Foster had been illegally arrested, the State pointed to testimony by the DuQuoin police officers that Foster was neither under arrest nor in custody, and would have been permitted to leave had he asked. The Fifth District, in finding Foster arrested, made the following statement applicable to this case, and particularly responsive to the State's argument in the case at bar that McMahon was not "restrained":

> "When [the officer] confronted respondent * * * it was apparent that respondent had no choice but to comply with the request to

get in the squad car. The fact that respondent offered no resistance does not lend support to the State's argument that there was no arrest. Respondent simply recognized that if he failed to comply with [the officer's] demand he would still be taken to the station. Likewise, at the interrogation, respondent had reason to believe that it would be futile to attempt to leave. Although [one of the officers] testified that respondent could have left, in light of the intensive interrogation in the courtroom in the presence of two police officers, respondent had no reasonable opportunity to go home until after the termination of the questioning. The State cannot now assert that respondent was free to go when it was apparent that he was being restrained." (66 Ill. App. 3d 193, 196, 383 N.E.2d 755, 757.)

The State's testimony and argument that this defendant, McMahon, was not restrained appears even more spurious in light of McMahon's obedience to Duke's request of him that he remove his shoe, and Duke's comment that had defendant attempted to leave the station, he "might not have made it down the stairs." Obviously, the defendant was not, and never was, "free to go" despite the police officer's testimony to the contrary.

In *Dunaway*, the Supreme Court concluded that "detention for custodial interrogation—regardless of its label—intrudes so severely on interests protected by the Fourth Amendment as necessarily to trigger the traditional safeguards against illegal arrest." (47 U.S.L.W. 4635, 4640.) The Supreme Court's decision in *Dunaway* compels us to classify the detention of McMahon as an arrest. (Accord, *People v. Dowdell* (1980), 81 Ill. App. 3d 266, 401 N.E.2d 295.) Therefore, we must next consider whether that arrest was effectuated with probable cause.

○2 In *People v. Peak* (1963), 39 Ill. 2d 343, 348, 194 N.E.2d 322, 325, the Illinois Supreme Court stated:

> "Probable cause for arrest exists when the facts and circumstances within the arresting officer's knowledge, and of which he had reasonable and trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in believing that an offense has been committed, and that the person arrested is guilty."

It is uncontradicted that the only facts connecting McMahon to the burglary at the time he was taken into custody were the alleged similarity of the pattern on the bottom of his boot to the pattern left in the spilled lemonade mixture on the floor of the burglarized office, and the proximity of the defendant to the scene of the crime. When Detectives Madsen and Duke noted the similarity of the pattern on the bottom of the boot to the shoeprint more than a week after they observed it, they were relying on

"visual memory" alone, as the shoeprint had not been preserved in any form. However, there is no testimony that the pattern on the bottom of McMahon's boot was in any way unusual or unique. In addition, it was not unusual for the defendant to be in the vicinity of the burglarized office as he had been living recently in a trailer behind Dr. Carter's office, and in any event, defendant's appearance in the area was nine days after the burglary was committed. Given these facts, we cannot say as a matter of law that Detectives Madsen and Duke had probable cause to arrest the defendant. The defendant's arrest, therefore, was illegal.

■■■ Since we have determined that the defendant's arrest was illegal, the final issue to be resolved is whether the mitigating factors of *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254, were present to remove the taint of the illegal arrest from the confession. In *Brown* the Supreme Court held that the giving of *Miranda* warnings, without more, was insufficient to attenuate the taint of an illegal arrest. The court stated that the temporal proximity of the arrest and the confession, the presence of intervening circumstances, the purpose and flagrancy of the official misconduct, and whether or not *Miranda* warnings are given, are all relevant factors to be considered "in determining whether the confession is obtained by exploitation of an illegal arrest." (422 U.S. 590, 603, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254, 2261.) In the instant case, it is true that the confession did not come immediately after the arrest. (See *People v. Williams* (1977), 53 Ill. App. 3d 266, 368 N.E.2d 679.) However, the total time period between the arrest and the confession was less than two hours. Such a short period of time is insufficient to establish attenuation. (See *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254; *People v. Creach* (1979), 69 Ill. App. 3d 874, 387 N.E.2d 762, *aff'd in part* (1980), 79 Ill. 2d 96; *cf. United States v. Owen* (5th Cir. 1974), 492 F.2d 1100, *cert. denied* (1974), 419 U.S. 965, 42 L. Ed. 2d 180, 95 S. Ct. 227 (four days sufficient time interval); *Commonwealth of Pennsylvania ex rel. Craig v. Maroney* (3d Cir. 1965), 348 F.2d 22, *cert. denied* (1966), 384 U.S. 1019, 16 L. Ed. 2d 1042, 86 S. Ct. 1966 (five days sufficient).) As concerns intervening circumstances, we believe the brief stop at McDonald's prior to arrival at the station is not an "intervening circumstance of significance." (See *Johnson v. Louisiana* (1972), 406 U.S. 356, 32 L. Ed. 2d 152, 92 S. Ct. 1620; *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.) Indeed, from the time he was taken into custody until he confessed, McMahon was always in the presence of Detectives Duke and Madsen. Regarding the final factor mentioned by the court in *Brown* to be examined in determining if an illegal arrest had tainted a subsequent confession—the propriety of police conduct—the First District in *Creach* made the following statement applicable to the case at bar:

"In this case it is also clear that the purpose of the arrests of the defendants was for questioning; this was the police testimony. There was not the flagrant action of breaking into a home or making a surprise arrest with guns drawn, but *nonetheless the fundamental misconduct remains the same as in Brown, making an arrest not on probable cause but only for purposes of taking a suspect into custody for questioning.*" (Emphasis added). (69 Ill. App. 3d 874, 892.)

Taking all of the *Brown* factors into consideration, we conclude that the taint of the illegal arrest was not attenuated.

Because we find that the confession of McMahon was the fruit of an illegal arrest, and none of the mitigating factors of *Brown* were present to attenuate the taint of this illegal arrest, we hold that McMahon's confession should have been suppressed, and it was error for the trial court not to do so. In the absence of McMahon's confession, the evidence presented by the State at the suppression hearing and at the stipulated bench trial, when viewed in a light most favorable to the State, is insufficient to establish the guilt of the defendant beyond a reasonable doubt.

For the foregoing reasons, the judgment of the Circuit Court of Tazewell County is reversed.

Judgment reversed.

ALLOY, J., concurs.

Mr. JUSTICE STENGEL, dissenting:

I must dissent from the majority's conclusion that defendant Ricky J. McMahon was arrested without probable cause. Their reliance on *Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248, is misplaced.

In *Dunaway*, the court held the defendant was "seized" in the Fourth Amendment sense when he was taken involuntarily to the police station. As noted in the majority opinion, the police were ordered by their supervisor to "pick up" defendant and "bring him in." When seized, the defendant was not told he was under arrest, but if he had attempted to leave he would have been physically restrained. Because the police lacked probable cause to arrest him, a subsequent confession was tainted by the illegal seizure and was inadmissible. In making that ruling, the court noted that the limited intrusions in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, which were upheld, fell far short of the type of intrusion associated with an arrest.

For purposes of arrest, reasonable grounds and probable cause are

one and the same. (*People v. Wright* (1974), 56 Ill. 2d 523, 309 N.E.2d 537.) The existence of probable cause was set forth in *People v. Robinson* (1976), 62 Ill. 2d 273, 276-77, 342 N.E.2d 356, 358:

> "* * * 'Whether or not probable cause for an arrest exists in a particular case depends upon the totality of the facts and circumstances known to the officers when the arrest was made. [Citations.] In deciding the question of probable cause in a particular case the courts deal with probabilities and are not disposed to be unduly technical. These probabilities are the factual and practical considerations of everyday life on which reasonable men, not legal technicians, act. *Draper v. United States*, 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329; *People v. Fiorito*, 19 Ill. 2d 246, 166 N.E.2d 606.' Also it is proper to recognize in judging whether there was probable cause that '[p]olice officers often must act upon a quick appraisal of the data before them, and the reasonableness of their conduct must be judged on the basis of their responsibility to prevent crime and to catch criminals.' *People v. Watkins*, 19 Ill. 2d 11, 19, 166 N.E.2d 433, 437."

For a thorough discussion of probable cause, see Justice Linn's dissenting opinion in *People v. Creach* (1979), 69 Ill. App. 2d 874, 387 N.E.2d 762.

A similar issue was confronted in *People v. Ramsey* (1979), 77 Ill. App. 3d 294, 297, 395 N.E.2d 973, 975, where they held:

> "Assuming, *arguendo*, that defendant's stop and subsequent arrest contained elements of illegality, the products of the arrest would still be admissible against defendant in the instant case. As pointed out in *Brown v. Williams* (1975), 422 U.S. 590, 599, 45 L.E.2d 416, 424, 95 S. Ct. 2254, 2259, quoting from *Wong Sun v. United States* (1963), 371 U.S. 471, 488, 9 L.E.2d 441, 455, 83 S. Ct. 407, 417, all evidence is not necessarily 'fruit of the poisonous tree' when its delivery results from illegal police action. Rather, the issue becomes whether the evidence was uncovered through 'exploitation of that illegality' or in a manner 'sufficiently distinguishable' to be purged of the primary taint.' *Brown*, 422 U.S. 590, 599, 45 L. Ed. 2d 416, 424, 94 S. Ct. 2254, 2259."

I would agree that observing defendant at the rear of the premises that had been previously burglarized did not, alone, establish probable cause for the defendant's warrantless arrest. However, those observations, considered in conjunction with the other circumstances, such as the similar shoe prints, the fact that defendant had no available automobile and was hungry, and that food was offered defendant by the police officers, certainly explain his willingness to accompany the police officers in their automobile to the station. At this point in time, I believe

probable cause was apparent, and defendant's consent to accompany the police was voluntary.

In the case at bar the police officers did not brandish any weapons; the defendant was not frisked or handcuffed nor was he ordered to spread-eagle against a wall. On the contrary, Officers Madsen and Due testified that the defendant was free to go and was not under arrest until he had made his first oral admission.

These facts do not warrant the adoption of the *Dunaway* standards to the case before us.

In addition, in the instant case the police officer's investigation of the burglary and the observation of the shoe prints by both officers, and the series of events triggered by that information were revealed "by means sufficiently distinguishable" from the initial inquiry, "to be purged of the primary taint." *Brown*, 422 U.S. 590, 599, 45 L.Ed. 2d 416, 424, 95 S. Ct. 2254, 2259.

For the reasons stated above, I dissent.