THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS DOZIER, Defendant-Appellant.

Fourth District   No. 15033

Opinion filed January 9, 1979.

Richard J. Wilson and Daniel D. Yuhas, both of State Appellate Defender's Office, of Springfield, for appellant.

Patrick M. Walsh, State's Attorney, of Decatur (Richard A. Current, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE MILLS delivered the opinion of the court:

Purse-snatching (robbery)—bench trial—guilty—3 to 10 years.

Affirmed.

At about midnight on December 28, 1977, a man came into the Decatur Police Station and told Officer Ronald White that he had information concerning a purse-snatching. A couple of days earlier the informant had observed Tom Dozier in the area of 900 West Decatur Street with a lady's brown purse. Later he read in the Decatur paper about a purse-snatching in that area at approximately the same time and

he believed Dozier was involved in it. Officer White checked the police reports and discovered a report indicating that a purse-snatching had occurred near the time and place identified by the informant. Officer White talked to a former police officer who had worked with the informant and this officer indicated that the informant had given reliable information in the past.

Officers White and Resch then proceeded to Dozier's residence. They arrived at the home at approximately 1:15 a.m., knocked on the front door, and eventually talked to the defendant, Tom Dozier. Officer White identified himself as a police officer and told him that they "needed to talk to him at headquarters in reference to a purse snatcher." The defendant, who was partially clad, went back into his house and returned a few moments later fully dressed. Officer White asked Dozier if he wanted to drive his car or drive with the officers and he said he would go ahead and ride with the officers.

Once in the station, Dozier was taken to an interview room and advised of his *Miranda* rights. Officer White testified that these rights were given to the defendant because he "was a suspect at that time in the crime." Dozier initially denied any involvement in the incident, but after he was informed the police had a witness to the crime who could implicate him, and was told it would be better for him if he told the truth, Dozier told the police that he was involved in the purse-snatching. The defendant was arrested after the interview was completed and charged the next day with robbery.

Subsequently, the defendant filed a motion to suppress written and oral statements that had been obtained from him alleging, in part, that his statements were involuntary because they were the result of promises and inducements of leniency. After a hearing, the trial court denied his motion. The defendant also filed a motion to quash arrest without warrant which was denied by the court. The court accepted the defendant's position that the police did not have sufficient evidence to establish probable cause at the time they went to the defendant's home but the court believed no arrest actually took place until after the defendant had given his statement. Following a bench trial, the court found the defendant guilty of robbery. Dozier was then sentenced to a term of imprisonment of 3 to 10 years.

■■ On appeal, the defendant first alleges the trial court erred in not suppressing inculpatory statements made by him at the police station because they were the product of his invalid detention. The State counters that the defendant was not under arrest at the time he made the statements. The Illinois Supreme Court stated the test for determining when a valid arrest takes place in *People v. Wipfler* (1977), 68 Ill. 2d 158, 368 N.E.2d 870:

"Both the Federal courts and the appellate courts of this State have held that the intent of the officer and the understanding of the arrestee are two essential elements in the definition of arrest. * * * It is also clear, however, that the component of an arrest which courts have labeled the arrestee's understanding is not identical to the arrestee's subjective beliefs at the time of arrest. The accepted test of understanding is not what the arrestee thought, but 'what a reasonable man, innocent of any crime, would have thought had he been in the defendant's shoes.' " 68 Ill. 2d 158, 165-66, 368 N.E.2d 870, 872-73.

In *Wipfler*, the police were informed that a certain individual might have some knowledge about two burglaries, so they called his home and told his mother that they would like to talk to her son about some burglaries. After school the defendant went to the police station and was questioned by two detectives in a closed room where he confessed. The supreme court held there was no arrest when the defendant entered the interrogation room.

■■ In the present case, defendant asserts that any reasonable man who was accosted in his home at 1 a.m. by two police officers and told to get dressed to come to police headquarters for questioning concerning a purse snatcher, would have regarded himself under arrest. Defendant also claims the fact that he was given *Miranda* warnings once he arrived at the police station indicates he was under arrest because the warnings are only required in situations of "custodial interrogation." In reply, the State notes that Dozier was free to drive his own car instead of riding with the police. The police testified that when they took Dozier to the station they never informed him or suggested to him that he was under arrest and never searched or handcuffed him. We believe that the evidence in this case supports the trial court's finding that the defendant was not arrested until after the interview was terminated. The fact that *Miranda* warnings were given is only indicative of the cautiousness of the officers and not determinative of whether the interrogation was custodial. *People v. Wipfler*.

Defendant next claims the trial court erred when it did not suppress the pretrial statement made by the defendant after Officer White told him that "it would be in his favor, his benefit to tell the truth." Officer Resch explained to Dozier that "the truth is always better than a lie; a lot of times when people lie they can't remember what they lied and they caught [*sic*] in another lie trying to cover up the one they told at the beginning." After this, Dozier told what had happened. The defendant testified that he confessed to the robbery because they told him that it would be better for him if he told the truth but they did not explain to him how it would be better.

■■ Inculpatory statements obtained by express or implied promises of leniency or encouragement of any benefit or favor made by police officers will render a subsequent confession involuntary and inadmissible. (*Malloy v. Hogan* (1964), 378 U.S. 1, 12 L. Ed. 2d 653, 84 S. Ct. 1489; *People v. Bosveld* (1969), 109 Ill. App. 2d 317, 248 N.E.2d 697.) However, a mere exhortation to tell the truth does not render a confession inadmissible. (*People v. Taylor* (1974), 58 Ill. 2d 69, 317 N.E.2d 97; *People v. McGuire* (1968), 39 Ill. 2d 244, 234 N.E.2d 772; *People v. Hartgraves* (1964), 31 Ill. 2d 375, 202 N.E.2d 33.) And a trial court's finding that a statement was voluntary will not be disturbed unless it is contrary to the manifest weight of the evidence. (*Wipfler.*) Since the police in this case merely encouraged the defendant to tell the truth in a noncoercive manner without informing him of any specific benefit, the confession was voluntary.

Finally, defendant asserts the trial court erred when it did not personally and fully admonish him regarding the differences between the two sentencing acts applicable to his case prior to the time he made his election. Although section 8—2—4(b) (Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1008—2—4(b)) gives the defendant the right to elect to be sentenced under either the law as it existed at the time of his offense or the law in effect at the time of sentencing, there is no requirement—statutory, decisional, or by rule—that the election be knowing and intelligent, nor that such election constitutes a waiver of a constitutional right, nor that the sentencing judge must explain the variances between the alternative acts, nor that the trial court admonish him as to what will or might be his best or most advantageous choice, nor that the trial judge must tell him in advance of election what the sentence *will* be under each act. Thus, it is totally unlike the situation present under Supreme Court Rules 401 and 402. Ill. Rev. Stat. 1977, ch. 110A, pars. 401, 402.

■ The Illinois Supreme Court in *People v. Hollins* (1972), 51 Ill. 2d 68, 280 N.E.2d 710, ordered defendant's sentence be vacated since the records failed to show that he was advised of his right of election or permitted to elect to be sentenced under either the law in effect at the time the offense was committed or the one in effect at the time of sentencing. However, in the present case, it is clear the defendant was advised and permitted to elect the act under which he desired to be sentenced. Furthermore, defense counsel volunteered that the matter had been discussed with the defendant at some length and that they decided to proceed under the law as it existed at the time of the offense.

Judgment affirmed.

GREEN and TRAPP, JJ., concur.