THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DAVID V. PUCKETT, Defendant-Appellant.

Fourth District No. 15091

Opinion filed April 18, 1979.

Richard J. Wilson and Barbara A. Chasnoff, both of State Appellate Defender's Office, of Springfield, for appellant.

Robert J. Bier, State's Attorney, of Quincy (Robert C. Perry, of State's Attorneys Appellate Service Commission, of counsel), for the People.

744

Mr. JUSTICE MILLS delivered the opinion of the court:

Two public defenders.

Conflict of interest?

No.

We affirm.

But first, the background.

Puckett pleaded guilty to a charge of theft over $150 and was sentenced to a penitentiary term of 2 to 10 years. After imposing sentence, the trial court advised Puckett that he had a right to appeal and that Attorney John Wooleyhan—Puckett's appointed counsel at the entry of the guilty plea and an Adams County public defender—would be appointed to represent him unless defendant objected. Puckett stated that he *did* object to being represented by Wooleyhan. Then, Anthony Cameron, another Adams County public defender, was appointed to represent the defendant.

Puckett later filed a motion to vacate his guilty plea. The principal points in the motion were that (1) Puckett was denied effective assistance of counsel because counsel did not advise defendant of a valid and viable defense, namely, that of intoxication; and that (2) he was denied the right to effective assistance of counsel because his counsel did not explain the differences in the sentencing laws in a manner which allowed defendant to make an intelligent election between the two laws.

At the hearing on the motion to vacate, Puckett testified that on the same day of the theft he had consumed three 6-packs of beer and five shots of vodka. In addition, Puckett stated that he had been stopped in Missouri on the day in question and, although the charge was later dismissed, was ticketed for driving while intoxicated, and a breathalyzer test was administered. Defendant testified that he had talked about the circumstances of the ticket with defense counsel Wooleyhan on one occasion, but they had not discussed any possible defenses to the automobile theft charge.

Puckett's testimony concerning his alcoholic consumption was contradicted on cross-examination by defendant's admission that he had previously told the probation officer that he had drunk about eight beers considerably earlier on the day in question. Defendant admitted that what he told the probation officer "would be a little more accurate" than what he had said during his testimony at the hearing on his motion to withdraw the guilty plea.

The only other witness at the hearing to vacate defendant's guilty plea was Puckett's prior defense counsel, John Wooleyhan. Wooleyhan testified that he had interviewed Puckett but had not advised defendant of the defense of intoxication nor had he asked Puckett whether he wanted to avail himself of that defense. However, Wooleyhan did state

that he was aware of the possibility of the defense of intoxication if a person met the statutory requirement and had talked with defendant about the extent of his drinking on the day in question.

On cross-examination, Wooleyhan stated that he was aware that Puckett had been arrested in Missouri for driving while intoxicated and had been administered a breathalyzer test. On redirect examination, Wooleyhan admitted that he had not found out the results of the breathalyzer test.

Defense counsel Cameron then elicited testimony concerning the fact that he and John Wooleyhan were both Adams County public defenders. Wooleyhan declared that he and Cameron were not associated with the same office, did not share personnel, expenses, or have a mutual caseload.

The trial court then denied defendant's motion to vacate and specifically found that any contention that the defense of intoxication should have been used was pure speculation. The court decided that defense counsel had merely exercised his discretion and judgment in deciding that the defense of intoxication was not available to the defendant.

## PUBLIC DEFENDERS

We turn our attention first to the most perplexing issue on appeal: Defendant claims that because one of the allegations in his motion to withdraw his guilty plea was that public defender Wooleyhan was incompetent, the trial court should have appointed someone other than another Adams County public defender to represent him on his motion. Anticipating just such an argument on appeal, defendant's attorney at the motion to vacate the plea (Mr. Cameron) had placed in the record testimony regarding the fact that the public defender's office in Adams County was decentralized and the attorneys worked independently from each other. However, in light of the importance of the question, this court remanded this case to the Circuit Court of Adams County in order that the record could be supplemented on the question of the composition and character of the Adams County public defender's office.

That hearing—conducted both expediently and exhaustively by the trial court—revealed that the Adams County Public Defender's Office is completely decentralized and any connection between public defenders is in name only. As the trial court noted in its order and memorandum of opinion, the evidence conclusively establishes that each public defender is employed on a part-time basis and also conducts a private practice. The county does not provide office space nor is any money allotted to the public defenders to cover overhead expenses connected with their duties.

The public defenders do not share offices, files, expenses, cases, or even communicate with one another except in a fashion common to all

attorneys. As the trial court noted, the only common bonds possessed by the public defenders is their title and the fact they receive their payments and expenses from county funds and are appointed in the same manner.

With this evidence in mind, the trial court concluded: (1) that no waiver of the alleged conflict of counsel was given by defendant, and (2) that no conflict existed between the attorneys appointed by the court to represent the defendant, because there is no common interest between the two individual practitioners other than that they are both lawyers, that they both hold the title of public defender, they are both appointed by the court, and they are both paid by Adams County.

In *People v. Terry* (1970), 46 Ill. 2d 75, 262 N.E.2d 923, and *People v. Smith* (1967), 37 Ill. 2d 622, 230 N.E.2d 169, the Illinois Supreme Court held that a conflict of interest exists when one public defender is appointed to represent a defendant in a post-conviction hearing based in part on charges of incompetent representation afforded to the defendant at trial by another public defender. The court, in *Terry*, described the conflict for the public defenders as being the natural inclination to protect their reputation by defending against such charges, and the duty as an advocate to aid the defendant in establishing his claims of incompetence. The *Terry* and *Smith* rationale has been held to apply in withdrawal of guilty plea situations such as the instant case. *People v. Norris* (1977), 46 Ill. App. 3d 536, 361 N.E.2d 105.

However, the supreme court in *Terry* and *Smith* was apparently dealing with a centralized public defender's office in which there is one public defender and perhaps several assistants who share office space and function more in the same manner as a State's Attorney's office or any private law office functions. As previously mentioned, the Adams County public defender's office is completely decentralized and each defender functions as a separate entity. Unlike the *Terry* and *Smith* situations, a public defender in a decentralized office does not have a natural inclination to protect his reputation by defending charges of incompetency made against another public defender. In fact, in a decentralized office such as Adams County there is no more of an inclination to protect another public defender than there is an inclination on the part of non-public defenders to protect the reputation of another criminal defense lawyer.

o 1 We refuse to extend the conflict of interest doctrine in such an absurd manner and therefore we find that the *Terry* and *Smith* rationale does not apply to decentralized public defender's offices.

Actually, the real and crucial question in a decentralized office situation is whether the defendant was afforded competent and effective representation by his counsel on the motion to vacate his plea of guilty. Here, the record categorically demonstrates that Puckett was given very

competent and effective representation by attorney Cameron. Consequently, defendant's conflict of interest contentions are without merit.

## INCOMPETENCY OF COUNSEL

 Now, as to the other two issues on their merits, we concur in the trial court's judgment. Incompetency of counsel is to be found only when representation is so poor as to amount to no representation at all, or to reduce the proceedings to a farce or mockery. (*People v. Elliott* (1977), 46 Ill. App. 3d 887, 361 N.E.2d 852, *cert. denied* (1978), 435 U.S. 973, 56 L. Ed. 2d 65, 98 S. Ct. 1617.) In addition, the defendant must demonstrate that the actual incompetence resulted in substantial prejudice to him such that the cumulative effect could have produced a different result. *People v. Stepheny* (1970), 46 Ill. 2d 153, 263 N.E.2d 83; see *Elliott.*

In the instant case, the record does not establish either incompetency or prejudice to the defendant. As to the intoxication defense, Puckett's testimony at the motion to vacate his guilty plea was that he drank three 6-packs of beer and five shots of vodka on the day of the alleged theft. This testimony, however, is contradicted by his prior remark to the probation officer who prepared his presentence report in which defendant stated that he had about eight beers on the day in question. Puckett admitted at the hearing on the motion to vacate that what he told the probation officer "would be a little more accurate" than what he said during his testimony at the hearing on his motion to withdraw the plea of guilty.

 Defense counsel Wooleyhan was aware of the statutory defense of intoxication but, after talking to defendant and interviewing him concerning the amount of drinking done on the day in question, Wooleyhan evidently concluded that such a defense was not a viable one and that defendant would be better off pleading guilty to the offense. Before making this decision, it would certainly have been advisable for defense counsel to have investigated the results of the Missouri breathalyzer test. However, we find that this failure does not render Wooleyhan's performance incompetent under the accepted test spelled out in *Elliott.* Even assuming, *arguendo*, that the failure to investigate the breathalyzer test did reflect some degree of incompetence, there is absolutely no showing of any substantial prejudice in this case since defendant's statements to the probation officer indicate that he had drunk only eight beers several hours prior to the theft, and therefore an intoxication defense would not be a viable one. See *Elliott.*

## SENTENCING ELECTION

But—Puckett argues—defense counsel was incompetent in failing to ask the trial court to inform defendant of the exact sentence that he would receive under both the old and new sentencing act. Defendant claims that

if he had been informed that he would definitely receive a sentence of 2 to 10 years under the old law, he would have chosen the new law, because, even if he got the maximum of 5 years under the new law, he would have been released in 2½ years for good time.

■ Defendant's argument fails since, although defendant does have the right to be informed that he has a choice of being sentenced under the old or new sentencing act, the statute does not give the defendant the right to be sentenced under both laws and then to pick the sentence he likes. Here, the trial court told Puckett the possible range of sentences under both laws. There is no requirement that the trial court advise defendant of the differences between the various sentencing laws, or fix definite sentences under both laws and allow defendant to pick the most favorable sentence. (See *People v. Dozier* (1979), 67 Ill. App. 3d 611, 385 N.E.2d 155.) Therefore, since the trial court is under no duty to set forth alternative sentences under both sentencing acts, trial counsel certainly was not incompetent for failing to request that the trial court set sentences under both acts.

Affirmed.

GREEN and TRAPP, JJ., concur.