THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEE JONES, a/k/a/ Lee A. Momient, Defendant-Appellant.

First District (4th Division)    No. 78-2017

Opinion filed September 18, 1980.

Ralph Ruebner and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Iris E. Sholder, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Defendant, Lee Jones, also known as Lee Momient, was charged by information with attempt murder (Ill. Rev. Stat. 1975, ch. 38, par. 8—4) and three counts of aggravated battery (Ill. Rev. Stat. 1975, ch. 38, pars. 12—4(a), 12—4(b)(1)). Following a trial by jury, defendant was found guilty of all charges. Judgment was entered upon attempt murder and defendant was sentenced to a term of 50 to 100 years' imprisonment. From the conviction, defendant appeals and raises the following issues: (1) His assignment to a special recidivist court was prejudicial and unconstitutional;

(2) the jury was prejudiced by seeing him in handcuffs and under guard of a deputy sheriff; (3) it was error for the State to be allowed to present evidence of identification where no issue of identification was raised; and (4) his election between sentencing codes was not intelligently made.

We affirm the judgment of the trial court.

On October 14, 1977, Chicago Police Officers Alfred Williams, Rudolph Winston, Karl Manuel and Eddie Jackson were assigned to a detail to arrest prostitutes. The patrol involved officers wearing civilian clothes and driving unmarked cars.

At approximately 1 a.m., the officers arrested Cassandra Brooks for prostitution at 800 North Clark Street, in Chicago. Brooks was placed in the car driven by Officer Jackson. Leaving the scene of the arrest shortly thereafter, Officer Jackson turned west onto Elm Street and stopped at the intersection of Elm and LaSalle Street. While he was waiting at the stop sign, a gray Lincoln Continental automobile, traveling north on LaSalle, swerved at the intersection and then came to a stop in the middle of the street, approximately 4 or 5 car lengths north of the intersection. Officer Jackson turned the corner, northbound onto LaSalle Street, and drove between the Lincoln and another car parked at the curb. The officer's car and the Lincoln were about 8 or 12 inches apart. The driver of the Lincoln lowered his electric window on the passenger side and yelled, "You almost hit me." Officer Jackson responded that he did not. The driver repeated his taunt and Officer Jackson again responded. After the verbal exchange had taken place a third time, the driver leaned over, raised his hand with a gun in it, and fired one shot which struck Officer Jackson in the head. The driver of the Lincoln, who was later identified as defendant, sped away.

Officer Manuel testified he saw the car in question when it and Officer Jackson's car were stopped next to each other, but he could not hear the conversation. He heard a loud noise and when he saw the Lincoln drive away he followed it. Officer Manuel was able to see the license number, ILL 269.

Verna Jones, defendant's wife, testified at trial. She said defendant left their apartment early in the morning on October 14, 1977. He was driving her 1977 Lincoln Continental which had license plates, ILL 269. Defendant called her later that day and told her to report her car stolen. The witness stated defendant's voice sounded nervous and scared.

Chicago Police Officers Wayne Johnson and John Rice responded to a radio call to locate the Lincoln in question. Officer Johnson and his partner apprehended and arrested defendant farther north. When Officer Rice arrived at the scene, he looked inside the car and found a pistol lying with the "butt up" against the transmission hump. The gun and defendant were taken to the police station.

Later that same morning, a lineup was held. Defendant was identified

by Officers Williams and Winston. Cassandra Brooks also picked defendant out of the lineup but was uncertain of her identification.

Officer William Scanlon of the mobile unit crime lab of the Chicago Police Department examined the car driven by Officer Jackson. A bullet was found on the rear seat. Officer Scanlon also examined the recovered weapon. It was a .357 python revolver. Two cartridges and two casings remained in the cylinder. Donald Ginell, a firearms examiner for the police department, performed test firings of the weapon and determined the bullet found in the car driven by Officer Jackson had been fired from the gun recovered at the time of defendant's arrest.

A stipulation by the parties was admitted into evidence. It stated that if Dr. Vinod Sahgal, a neurologist, were called, he would testify Officer Jackson received a bullet wound in the left frontal area and an exit wound in the upper rear area of his head. Part of his skull was lost and substantial brain damage occurred. Jackson was left paralyzed on his right side, including loss of vision in his right eye.

After hearing the evidence, the jury found defendant guilty of attempt murder and aggravated battery. Judgment was entered only for attempt murder.

At the post-trial hearing, defendant testified, in mitigation, that the shooting was an accident. He had stopped his car because he wanted to avoid an accident. He said he "pulled the pistol and it went off." Defendant said he had obtained the gun 6 hours earlier at a gambling house and did not intend to harm the police officer.

Defendant's primary contention is based upon the fact that prior to trial defense counsel was denied a motion for change of venue and reassignment. The motion was filed because the trial court was a specially created recidivist court to which defendant objected on various grounds. He argues that assignment to such a special court was unconstitutional and created an unacceptable risk of prejudice. The State responds that the special courts are not unconstitutional.

In review of this issue of first impression, we turn to the authority of the Illinois Supreme Court. The court has set the standard for determining prejudice where, as here, there may be prior knowledge by jurors of facts and issues to be heard. In *People v. Black* (1972), 52 Ill. 2d 544, 557, 288 N.E.2d 376, 384, the court held:

> "Jurors need not be totally ignorant of the facts and issues involved. It is sufficient if the juror can lay aside his impression and render a verdict based on the evidence presented. *Irvin v. Dowd*, 366 U.S. 717, 6 L. Ed. 2d 751, 81 S. Ct. 1639; *People v. Williams*, 40 Ill. 2d 522."

The United States Supreme Court has held that a State may distinguish between classes of offenders and employ differing schemes of prosecution in order to facilitate, expedite, and reduce expense. (See *Johnson v.*

*Louisiana* (1972), 406 U.S. 356, 32 L. Ed. 2d 152, 92 S. Ct. 1620.) The court has also upheld recidivist statutes as constitutional. (See *Spencer v. Texas* (1967), 385 U.S. 554, 17 L. Ed. 2d 606, 87 S. Ct. 648; *Oyler v. Boles* (1962), 368 U.S. 448, 7 L. Ed. 2d 446, 82 S. Ct. 501.) Though these cases may be factually distinguishable from ours, they do represent authority for State judicial systems to categorize offenders and prosecutorial procedures.

■■ The constitution of this State provides:

"Subject to the authority of the Supreme Court, the Chief Judge [of the circuit court] shall have general administrative authority over his court, including authority to provide for divisions, general or specialized, and for appropriate times and places of holding court." (Ill. Const. 1970, art. VI, §7(c).)

The establishment of special courts for recidivist cases is in line with our interpretation of the Illinois Constitution. So long as the expedience and efficiency sought to be achieved are not accomplished at the expense of undue prejudice to defendants, such procedures are proper.

■■ Moreover, defendant suggests we reverse the judgment because recidivist courtrooms create an "unacceptable risk of prejudice." We will not reverse the trial court on such a speculative standard. The record does not reflect nor does defendant argue actual prejudice. The motion for change of venue and reassignment was properly denied.

Defendant contends that his being viewed in handcuffs was error. It is preferable for defendants not to be seen in handcuffs and in custody of the sheriff. However, the fact that jurors may see a defendant in handcuffs is not so inherently prejudicial as to require a mistrial. *People v. Hyche* (1978), 63 Ill. App. 3d 575, 583, 380 N.E.2d 373, 379.

■■ Nor was it reversible error for the trial court to allow Officers Williams and Winston, who witnessed the shooting, to testify they identified defendant in a lineup. Identification of a defendant as the person responsible for a crime is a key issue in a criminal case. Although identification may not have been directly at issue, defendant still had to be proved guilty beyond a reasonable doubt. He was not shown to have been harmed or prejudiced by the identification testimony.

Finally, defendant urges that a trial court be required to disclose what sentence would be imposed under alternate sentencing codes, prior to or at the time of election. To support his position, defendant cites authority which requires the accused to be allowed to make an informal election between such codes. We see a distinction between defendant's argument and what he purports to be the rule.

Because defendant shot Officer Jackson in 1977, prior to the effective date of the new sentencing code, he was entitled to elect between the sentencing provisions in effect at that time (Ill. Rev. Stat. 1975, ch. 38, pars. 8—4(c)(1), 1005—8—1(b)(2)), or the provisions in effect at the time of trial,

under which he could be sentenced as a repeat offender and given an extended term (Ill. Rev. Stat. 1977, ch. 38, pars. 8—4(c)(1), 1005—5—3, 1005—8—1(b)(2), 1005—8—2). Defendant is given the right to elect under section 8—2—4 (Ill. Rev. Stat. 1977, ch. 38, par. 1008—2—4).

Defendant filed a motion, asking the court to reveal what sentence the judge intended to impose under each code. The judge declined, stating he would make such a disclosure only if he felt it essential to an intelligent election.

■■ We agree with the trial court that disclosure of the actual sentences to be imposed under each statute is not required for an intelligent election between sentencing codes. Although a trial judge should explain old and new provisions on the maximum penalties provided under each code, the defendant does not have the right to be sentenced under both laws and then to choose the sentence he prefers. (*People v. Puckett* (1979), 70 Ill. App. 3d 743, 748, 388 N.E.2d 1293, 1297; *People v. Dozier* (1979), 67 Ill. App. 3d 611, 615, 385 N.E.2d 155, 158.) Instead, the burden is upon counsel, not the court, to explain and suggest what appears to be the best course. (*People v. Warfel* (1979), 67 Ill. App. 3d 620, 627, 385 N.E.2d 175, 180.) There is no error in the trial court's refusing to disclose the specific sentences it would impose under each statute.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

LINN, P. J., and ROMITI, J., concur.