THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIE RAY ROBINSON, Defendant-Appellant.

Fourth District   No. 16986

Opinion filed October 7, 1981.—Supplemental opinion filed on denial of rehearing December 22, 1981.

Daniel D. Yuhas and David Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellant.

Basil G. Greanias, State's Attorney, of Decatur (Kenneth R. Boyle and Donald L. Hays, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE MILLS delivered the opinion of the court:

The question of two public defenders revisited.

We again find no conflict of interest.

We once more affirm.

The pertinent chronology is this:

Sept. 8, 1980: Robinson charged with two separate counts of burglary.

Sept. 9, 1980: Defendant served with copy of information, found to be indigent, public defender appointed to represent him.

Sept. 18, 1980: Defendant appears in open court with his attorney, Public Defender Scott B. Diamond, pleads not guilty, case alloted for jury trial.

Nov. 10, 1980: Motion to quash arrest and to suppress evidence (filed by Public Defender Scott B. Diamond) denied.

Dec. 10, 1980: Public Defender Jerry Finney appears for defendant, case re-alloted for Dec. 15, 1980, for trial or as soon thereafter as reached on trial call.

Dec. 22, 1980: Defendant pleads guilty to count I, count II is dismissed, sentence of four years imposed. (The plea was a negotiated one and the agreed sentence was four years.)

Jan. 12, 1981: Robinson files *pro se* motion to withdraw guilty plea and vacate sentence.

Jan. 23, 1981: Hearing held on motion to withdraw plea.

At that hearing, Robinson testified that his plea was involuntary because the trial court—Chief Judge Rodney A. Scott—denied requests for a continuance to allow his appointed counsel to prepare for trial or to permit Robinson to hire his own counsel. He said that he was first represented by Public Defender Scott Diamond, and was later represented by Public Defender Jerry Finney when Mr. Diamond was appointed an associate circuit judge. Robinson testified that while in jail he talked with attorney Finney twice, primarily about the possibility of pleading guilty. Robinson said that he did not want to plead guilty, but Mr. Finney advised that the State had a strong case. Robinson testified he did not feel that Mr. Finney attempted to force him into pleading guilty or that Finney intentionally tried to coerce a guilty plea. When asked to explain his claim

that his guilty plea was coerced, defendant testified that when he first came into the courtroom on December 22—the day set for trial—he asked Finney if it was possible to get a continuance. When Finney stated that it would be impossible to get a continuance, Robinson said he would ask the judge. In chambers, Robinson told the judge that Finney had been on the case for less than two full weeks and had not had enough time to prepare for the case and asked for a continuance to hire his own attorney or to allow Finney to prepare a defense. In response to questioning by the trial court, Robinson testified that he had not done anything about hiring an attorney because he had no assets and his mother had been laid off from work until late November. The trial judge explained that Scott Diamond (defendant's original attorney) and Finney were both public defenders, and denied the continuance. Robinson testified that he did not feel that the denial was intended to coerce a guilty plea, but that it had that effect. He also said that he felt he had to plead guilty because Finney had not had enough time to prepare a defense. He further testified that he should not have been tried before Judge Scott because Judge Scott had twice sentenced one of defendant's brothers and because Robinson himself had been before Judge Scott four times. (However, Robinson did not ask to have Judge Scott excused from the case, and did not tell Mr. Finney about his prior appearances before Judge Scott.) After the motion for continuance was denied, Robinson said he pleaded guilty because he thought that he could withdraw the plea, as a matter of right without a hearing, within 30 days. Attorney Finney did not tell Robinson that he could withdraw his plea as a matter of right; it was the inmate who prepared his *pro se* motion to vacate his plea who so advised him. Robinson said he intended to withdraw his plea because he thought there was no other way to gain adequate time to prepare a defense. Robinson admitted that at the time of his plea he understood the judge's explanation of the possible sentences, the nature of the case, the proposed plea agreement, the judge's statement about the plea agreement, and that he was going to be sentenced to four years' incarceration under the plea agreement.

Attorney Jerry Finney testified at the same hearing that he had been a public defender for four years, had represented Robinson, consulted with him in the county jail two or three times prior to trial, utilized the file of Scott Diamond which had been accumulated when Diamond was representing Robinson, had discussed Robinson's case with Diamond, and was prepared for trial on December 22. Finney had tried more than 100 jury trials. He testified that he never told defendant that he would not represent him at trial, but he did tell Robinson that he preferred to have the cases tried separately, and also discussed possible witnesses who could be called to trial on Robinson's behalf. Defendant did not name any specific

witnesses whom he wished to call. Finney realized that defendant did not really want to plead guilty, but thought that Robinson had decided that a guilty plea was better than going to trial. Mr. Finney testified that few of his clients really want to plead guilty and that the greatest pressure to plead guilty often occurs just before trial. Finney testified that Robinson consistently stated that he was not guilty of the offenses.

At the conclusion of the January 23, 1981, hearing, the trial court found that at the time he pleaded guilty, Robinson intended to move to withdraw his plea, that Robinson's plea was not coerced, that his motions to continue the trial and to hire private counsel were intended to delay trial, that two pretrial readiness calls had been made, that defense counsel was ready for trial, and that the only coercion present was the coercion which was present in every guilty plea. The motion to withdraw the plea was denied.

### PUBLIC DEFENDERS

Defendant in his brief phrases the solitary issue on review thusly: "Whether the trial court [Judge Scott] erred by failing to appoint counsel other than an assistant public defender [James Brinkoetter] to represent the defendant on his motion to vacate his guilty plea where that motion challenged the representation of defendant by the public defender [Jerry Finney] at the time the plea was entered."

More specifically, it is argued that because Robinson's motion to withdraw his plea attacked the quality of representation afforded by Public Defender Finney, the trial court erred by appointing Assistant Public Defender James Brinkoetter on the motion to withdraw the plea and this court should reverse the trial court and remand the cause for a new hearing with different counsel.

This is precisely the question posited in *People v. Puckett* (1979), 70 Ill. App. 3d 743, 388 N.E.2d 1293. We held in *Puckett* that there is no conflict in a defendant's continued representation by a second public defender even though the defendant calls into question the effectiveness of his appointed trial counsel—another member of the office of public defender—where the public defender's office of that county is decentralized in its operation. *Puckett* dealt with Adams County.

We held likewise in *People v. South* (1979), 70 Ill. App. 3d 245, 387 N.E.2d 1294, which involved Sangamon County. The opinions in both *Puckett* and *South* were handed down the same day.

Now we have the identical question postulated in a case from Macon County. We have followed our procedure utilized in *Puckett* by remanding this case to the Circuit Court of Macon County for a supplemental hearing and preparation of an additional record on the question of the composition and character of the Macon County Public Defender's

Office. This was accomplished with commendable dispatch, and a very extensive and thorough hearing on this evidentiary question was conducted and a comprehensive order of findings entered thereon by Judge Scott. It is clear from this supplemental record and order that all public defenders hold part-time positions, they are not furnished office space in county facilities, there are no central or adjacent offices provided, and each public defender "has his own law firm affiliation with none the same, and each has his own practice with county authorization by pay provisions that it be to half-time." As to assigned criminal cases, no common or mutual sets of files are maintained. Cases are individually assigned, and there is no joint responsibility for cases shared between public defenders. Each case is the sole responsibility of the public defender assigned, and there is no review or overseeing of the public defenders, each of whom has complete professional discretion to determine how his assigned cases will be handled. No common investigator or mutual staff are employed or utilized by all public defenders.

■■ *Ergo*, we concur completely in Judge Scott's ultimate finding that the Office of the Public Defender of Macon County is completely "decentralized and each defender functions as a separate independent entity." *Puckett* and *South* control. No error.

### INCOMPETENCY OF COUNSEL

■■ Although this entire case is actually rooted in whether or not Robinson received adequate representation by counsel at the time of his plea of guilty, that issue is not raised or argued in his brief in this court. Consequently, the matter is waived. But even if it were not, we find no merit in the charge. We have set forth in toilsome and wearying detail the factual and procedural background revealed by the trial record. Our unreserved conclusion is that no incompetency of counsel was demonstrated, and we concur completely with the trial judge's finding in this regard. (*People v. Elliott* (1977), 46 Ill. App. 3d 887, 361 N.E.2d 852, *cert. denied* (1978), 435 U.S. 973, 56 L. Ed. 2d 65, 98 S. Ct. 1617.) Motions on behalf of the defendant for discovery, to quash and suppress and for severance of counts for trial were presented. The record reflects no indication whatever of inadequacy of counsel. And the defendant has totally failed to demonstrate either actual incompetence or substantial prejudice to himself. *People v. Stepheny* (1970), 46 Ill. 2d 153, 263 N.E.2d 83.

Finding no error below, we affirm.

Affirmed.

GREEN and WEBBER, JJ., concur.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

JUSTICE MILLS delivered the opinion of the court:

Following the filing of this opinion, we allowed the filing of supplemental briefs and arguments by the defendant and the State. We have examined those briefs and arguments—which simply compare the facts in *Puckett* and *South* to those in this case—and find nothing in them to alter our original opinion as to the correctness of Judge Scott's determination that the Macon County Public Defender's Office was decentralized.

GREEN and WEBBER, JJ., concur.